(142 App. Div. 561.)

COLUMBUS DRY GOODS CO. v. GLOBE & RUTGERS FIRE INS. CO.

(Supreme Court, Appellate Division, First Department.    February 3, 1911.)

1. INSURANCE (§ 145*)—FIRE POLICIES—RENEWAL.
   A fire policy was renewed by execution of a binder by insurer's author-
   ized agent accepting application for a renewal and making the insurance
   effective from the date thereof, subject to conditions in policies issued
   by the respective insurers.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 276–280; Dec.
   Dig. § 145.*]

2. INSURANCE (§ 145*)—FIRE POLICIES—RENEWAL.
   Insured can recover under a binder for renewed fire insurance pro-
   cured on a written application by its agents in New York several days
   before the old policy expired, and covering the same property, which was
   located at Columbus, Ohio, though on the date of such expiration insur-
   er's agent, without communicating with the New York office and under
   direct negotiation with insured at Columbus, issued a policy intended as,
   but not purporting to be, a renewal of the insurance, and not covering
   all the property originally insured, where insured did not accept the pol-
   icy as compliance with insured's obligation to renew the old one, and
   where there was no restriction on the amount of insurance insured would
   carry.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 276–291; Dec.
   Dig. § 145.*]

3. INSURANCE (§ 665*)—FIRE POLICIES—RENEWAL—EVIDENCE—SUFFICIENCY.
   Evidence held to sustain a finding that insured did not receive a fire
   policy as renewal of insurance covering more property.
   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 665.*]

   Scott and Clarke, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Columbus Dry Goods Company against the Globe &
Rutgers Fire Insurance Company.    From a judgment for plaintiff
and from an order denying a new trial, defendant appeals.    Affirmed.

See, also, 131 App. Div. 603, 115 N. Y. Supp. 1106.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT,
CLARKE, and MILLER, JJ.

Charles D. Cleveland, for appellant.

Chester A. Jayne, for respondent.

INGRAHAM, P. J.    The plaintiff is a corporation organized under
the laws of the state of New Jersey and operated and maintained a
store in the city of Columbus, Ohio.    The defendant is an insurance
company organized under the laws of the state of New York.    The
plaintiff had, among other insurance upon its property in Columbus,
Ohio, two policies issued by the defendant for $2,500 each.    Policy
No. 222,243 was dated March 2, 1904, was to continue for one year
from the 11th of March, 1904, to the 11th of March, 1905, and covered
"store and office furniture, fixtures and furnishings, counters, shelv-
ing, show cases," and other personal property in "the five story and
basement brick, metal roofed building, situate and known as Nos. 168
to 176 North High street, Columbus, Ohio."    This insurance expiring

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on the 11th of March, 1905, a representative of Messrs. Weed & Kennedy, insurance brokers in the city of New York and who were plaintiff's agents, took to the office of the company what was called a "binder" to obtain a renewal of this insurance. Before the 11th of March, 1905, when this policy then upon the plaintiff's property expired, the representative of the defendant in charge of the defendant's business signed this binder, thereby accepting a renewal of this policy No. 222,243 for $2,500. This was some days before March 11, 1905. This binder provided:

"The undersigned accept the above and make the same binding from foregoing written date, subject to conditions of policies issued by respective companies."

And on that was written: "G. R. (defendant company) Amount 2500 Accepted J. H. P."—who was James H. Perry in the employ of the defendant, and it is not disputed but that he had authority to accept insurance. At or before the time this binder was signed, a formal application for a renewal of policy No. 222,243 was delivered to the defendant, and it is on this application that the binder was signed. No notice was given to Weed & Kennedy or the plaintiff that the defendant refused to renew this policy until after the fire which occurred on the 24th of March, 1905. On May 15, 1905, the plaintiff submitted proofs of loss claiming $1,678.52, stating that the amount of property damaged by the fire on March 24, 1905, was $24,000, the total amount of insurance on the property including the policy in question was $35,745, and the proportion of loss to the defendant under this policy was, as before stated, $1,678.52.

Upon these facts it is not disputed but that the defendant would have been liable upon this policy. The defendant's defense to this claim is based on the following facts: At the time in question the defendant had an agent in Columbus, Ohio, who had authority to issue policies of insurance. About a week prior to March 11, 1905, the defendant's agent in Columbus called upon the plaintiff and told its manager that he was the agent of the defendant in Columbus: that the defendant had a policy expiring on the 11th of March, that had formerly been placed in New York; and that he (the agent) would like to have the privilege of writing the business himself. The manager told the defendant's agent to come back on March 11th, and on that day the defendant's agent had another conversation with the manager. He then called the manager's attention to the fact that this policy expired at noon of that day, that the plaintiff also had another policy expiring in April, which policy the agent would also like to take care of, and the manager then instructed the agent to write up two policies to take the place of those expiring. The manager stated that this business had been placed by Weed & Kennedy of New York, and they rather expected that they would renew the business in New York, when the agent told the manager that, even if they did renew it in New York, it would have to come to the Columbus agent of the defendant for signature, and the manager then directed the agent to "write the business." On the agent's return to his office before noon, he had a new policy written out and mailed it to the plaintiff. This

policy of insurance was numbered 256,463 and was introduced in evidence. It did not purport to be a renewal of any other policy, and did not cover the fixtures and other property that was covered by policy No. 222,243, which expired on the 11th of March, and which had been renewed by the defendant at the request of Weed & Kennedy in New York. The premium on this policy issued in March issued in Columbus was paid.

The defendant's agent in New York testified that he signed this binder some few days before March 11th, so that at the time of these occurrences in Columbus the defendant had absolutely accepted a renewal of policy No. 222,243 which, as before stated, insured the office furniture, fixtures, and furnishings. That, it seems to me, was a completed transaction which renewed that policy. The policy issued by the defendant in Columbus on March 11th was not in form a renewal of policy No. 222,243, did not cover the same property, and it seems to me was clearly not the policy of insurance that the parties as between themselves had agreed to make, namely, a renewal of policy No. 222,243 covering the fixtures. What both the plaintiff and defendant undertook to do was to renew policy No. 222,243. That was accomplished by this binder, which was signed in New York, and which then became an actual existing obligation of the defendant. After this was signed and the renewal of policy No. 222,243 had become an accomplished fact, the defendant's agent in Columbus asked the plaintiff in Columbus, without any communication with the defendant in New York, to place the insurance through him and sent to the plaintiff a policy of insurance which undoubtedly was expected would take the place of policy No. 222,243, which expired on the 11th of March. It did not, however, take the place of that policy, and was not therefore a compliance with the obligation of the defendant to issue a policy in renewal of policy No. 222,243. There is no evidence that it was accepted by the plaintiff as a compliance with the defendant's obligation to issue a renewal of that policy. It seems to me that if the new policy issued on March 11, 1905, in Columbus, Ohio, was issued by mistake, the defendant could have repudiated that policy and might not have been liable on it. Assuming that the fact that its agent in Columbus issued a policy which was not a renewal of the policy which the defendant agreed to renew, which covered different property, which was not a compliance with the obligation it had undertaken in New York some days before to renew policy No. 222,243, was sufficient to justify the defendant in rescinding that policy as issued under a mistake of fact, it was not a defense to the obligation assumed by the defendant in the execution of this binder to renew the policy covering the fixtures which but for a renewal of that policy was not covered by insurance. Assuming, however, there was a question of fact as to whether this policy issued in Columbus, Ohio, was accepted as a renewal of policy No. 222,243, the court submitted that question to the jury, and at the request of the defendant charged that the sole question for them to determine was whether the policy issued and delivered to the plaintiff by the agent of the defendant at Columbus on March 11, 1905, was intended to be a renewal of the

former policy or new business; that if they found that the policy was a renewal they should find for the defendant. The court further charged the jury at the request of the defendant that if the policy delivered on March 11, 1905, was intended to be a renewal of the former policy, the jury must find for the defendant, and this instruction was repeated in several requests which were presented by the defendant and charged. The jury found a verdict for the plaintiff, and thus found that the policy delivered in Columbus was not issued as a renewal of policy No. 222,243 and was not received by the plaintiff as such a renewal, and, if this finding was sustained by the evidence, which I think it was, it seems to me there can be no doubt but that the plaintiff was entitled to recover.

It is stated that, by reason of the fact that the defendant issued this additional policy in Columbus for $2,500, there was more insurance on the property than either party intended. It does not seem to me that this necessarily follows. There was no restriction on the defendant as to the amount of insurance that it should take upon this property. The loss was less than the amount covered by the insurance on the property, and it made no difference to the plaintiff whether this policy issued by the defendant in Columbus was accepted as a valid policy of insurance or not, for it was fully covered on its stock by the other insurance. Accepting as valid the policy issued on March 11, 1905, in Columbus simply relieved other insurance companies from part of the obligation to the plaintiff under their policies. The continued existence, however, of policy No. 222,243 was essential to the protection of the plaintiff, as but for that policy its fixtures were not insured. The plaintiff was bound in its proof of loss to the various insurance companies which had risks upon its stock to state the facts in relation to the policy issued in Columbus, and the fact that the defendant accepted the obligation under that policy certainly should not estop the plaintiff from enforcing this policy on its fixtures. If the defendant had repudiated the policy issued in Columbus on March 11, 1905, then the insurance could have been adjusted so that the other companies could have been compelled to pay the total amount of loss. As before stated, it was entirely immaterial to the plaintiff whether the defendant admitted liability upon that policy or repudiated it. When the policy of March 11th was actually issued, there was nothing said about the amount of insurance on the stock and fixtures, and nothing was said on the question as to whether or not there should be an increase of insurance. Nor does it anywhere appear that the plaintiff was ever notified that the limit of insurance which the defendant would place upon its property was $5,000. This binder in suit was also included in the list of insurance furnished to the adjusters and upon which the adjustment was made, and, before any word came from the defendant repudiating the obligation under this binder, the adjustment with all the insurance companies had been made, and the amount for which each insurance company was liable had been accepted. The result is that, if the defendant succeeds in this defense, the plaintiff will lose a portion of the insurance which it

supposed it had upon the premises, and which loss could have been avoided if the defendant had promptly repudiated the Columbus policy.

We think, therefore, that the verdict of the jury was sustained by the evidence, and the judgment and order appealed from should be affirmed.

LAUGHLIN and MILLER, JJ., concur.

SCOTT, J. (dissenting). Defendant appeals from a judgment entered upon a verdict, and from an order denying a motion for a new trial.

The circumstances of the case are peculiar, and the net result will be, if this judgment be finally affirmed, that the plaintiff will have recovered upon three contracts of insurance for $2,500 each, although the plaintiff did not intend to take out, and the defendant did not intend to issue, more than two contracts, and neither party knew or understood or believed that more than two contracts had been entered into. The plaintiff owns a dry goods store in Columbus, Ohio. Prior to the year 1905, the defendant, whose office is in the city of New York, had carried insurance to the extent of $5,000 upon plaintiff's property in Columbus. This insurance was represented by two policies, one of which, for $2,500, and hereinafter referred to as "policy A," covered plaintiff's stock, and the other, also for $2,500, hereinafter referred to as "policy B," covered plaintiff's furniture and fixtures. Policy A, covering the stock, expired April 7, 1905, and policy B, covering the furniture and fixtures, expired on March 11, 1905. It had been plaintiff's custom to intrust the taking out and renewal of its insurance to the firm of Weed & Kennedy, who were insurance brokers in the city of New York.

Some time prior to March 11, 1905, defendant's local agent in Columbus applied to plaintiff to permit him to renew the two policies above referred to, which, after some demur, plaintiff consented to. Accordingly, on March 11, 1905, the day on which policy B expired, defendant's Columbus agent made out two new policies, which were sent to and received by plaintiff and retained by it. These new policies were undoubtedly intended as renewals of policies A and B; but, probably by mistake, the insurances were transposed. A policy, hereinafter termed "policy C," was dated March 11, 1905, and so written as to cover plaintiff's stock, although the former policy upon stock did not by its terms expire until April 7, 1905. A policy, hereinafter termed "policy D," was dated April 7, 1905, and so written as to cover plaintiff's furniture and fixtures, although the former policy upon furniture and fixtures expired by its terms on March 11, 1905. The result was that plaintiff was insured on its stock for $5,000 until April 7, 1905, and until that date was uninsured, by this defendant, as to its furniture and fixtures. It is reasonable to assume that this result flowed from some mistake, but whether that mistake was the fault of plaintiff or of defendant's local agent it is impossible to say, and is probably immaterial. At all events, the plaintiff, as has been said, accepted and retained the new policies, and later on, when a

loss had occurred, made proofs of loss and accepted payment under both policies covering the stock, viz., policies A and C.

While these transactions were taking place in Columbus, Weed & Kennedy in New York, a few days before March 11, 1905, applied to defendant at its main office for a renewal of policy B, and received what is known in insurance parlance as a "binder," being a memorandum to the effect that the company has agreed to issue a policy. Ordinarily a "binder" becomes effective at once, and the property is deemed to be insured from the moment the binder is issued, standing in place of a policy until a formal policy is actually issued. When a "binder" is issued, as in this case, as evidence of an agreement to renew an outstanding policy, it manifestly becomes effective, as a contract of insurance, only upon the expiration of the former policy, just as a formal renewal policy would become effective only upon the expiration of the policy to be renewed. The effect of the "binder" in the present case was that the defendant agreed to renew policy B on furniture and fixtures upon the expiration of that policy on March 11, 1905, so that the "binder" became effective as a policy of insurance, if at all, upon March 11, 1905, at the same time that policies C and D were delivered to plaintiff in Columbus. The plaintiff, having adjusted its loss and received payment under both A and C, now sues for the loss on furniture and fixtures under the "binder." A fire occurred on plaintiff's premises on March 24, 1905. Policy D, covering furniture and fixtures, but which was so drawn as not to become effective until April 7, 1905, was surrendered and canceled. Plaintiffs made proofs of loss and were paid under policies A and C; both covering stock. It also made proofs of loss under the "binder"; but these proofs were rejected and returned, and defendant's adjuster refused to take part in the adjustment of losses on the furniture and fixtures.

It is quite evident that this whole history comprised a chapter of mistakes, commencing with the error in making out the policies in Columbus. It is clear that the new policies taken out there were intended to be renewals of the former policies, and it is apparent that Weed & Kennedy had no intention of taking out additional insurance on the furniture and fixtures, but meant merely to renew the former policy, so that we have the case of an attempt in two places to renew the same policy. If the renewals had been accurately made in Columbus, so that a new policy had been issued there covering furniture and fixtures dated March 11, 1905, and Weed & Kennedy at the same time, and in ignorance of the Columbus renewal, had taken out a renewal "binder" in New York, no one would have contended for an instant that defendant had agreed to issue two policies of $2,500 each upon the furniture and fixtures, for it would be apparent that the case was one of two persons seeking to renew the same policy. This case seems to me to be identical in principle. When the mistake was made in the renewals of the policies in Columbus, if it was a mistake, the plaintiff undoubtedly could have had the mistake corrected. By its failure to seek a correction, and by subsequently proving a loss upon both policies, the old and the new, which covered the stock, it adopted the mistake and consented to the renewal of the policy expiring on

March 11, 1905, on furniture and fixtures, by a policy covering stock. It was its duty to have notified its agents in New York that it had determined to renew the policies in Columbus, and the defendant should not be mulcted because the plaintiff neglected this duty. Having elected to renew the policies in Columbus, the authority of the New York agents to effect the renewal was necessarily revoked, notwithstanding they had not been apprised of the fact. The defendant's liability, if it was liable, must rest upon contract, and it is essential to the validity of a contract that the minds of the parties shall have met. It is clear beyond contradiction, as it seems to me, that the minds of these parties never met upon the proposition that plaintiff should be insured upon three policies for $2,500 each.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE, J., concurs.